## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Mohamed A.,

   Petitioner,

v.

Todd Blanche, *in his official capacity as Acting Attorney General of the United States*; Markwayne Mullin, *in his official capacity as Secretary of the Department of Homeland Security*; Todd Lyons, *in his official capacity as Acting Director of United States Immigration and Customs Enforcement*; David Easterwood, *in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; John Hartnett, *in his official capacity as Acting Director, New Orleans, U.S. Immigration and Customs Enforcement*; Charles Guillory, *in his official capacity as Sheriff of Evangeline Parish*,

   Respondents.

File No. 26-CV-2799 (JMB/DTS)

**ORDER**

---

Jacqueline A. Mrachek and Taylor R. McKenney, Littler Mendelson P.C., Minneapolis, MN, for Petitioner Mohamed A.

David W. Fuller and Jaymarie Arlene Miranda, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, Todd M. Lyons, David Easterwood, and John Hartnett.

---

1

This matter is before the Court on (1) Petitioner Mohamed A.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which names Todd Blanche, Markwayne Mullin, Todd M. Lyons, David Easterwood, John Hartnett (Federal Respondents), and Charles Guillory (together, with the Federal Respondents, Respondents) as Respondents; and (2) the Federal Respondents' Motion to Dissolve the Court's June 1, 2026 Order requiring Respondents to return Mohamed A. from a facility in Louisiana to Minnesota (Doc. No. 12). For the reasons explained below, the Court grants the Petition and denies Respondents' motion as moot.

## FINDINGS OF FACT

1.    Mohamed A. is a 31-year old native and citizen of Somalia. (Pet. ¶ 1; Doc. No. 2-1 at 2.)

2.    On or about April 29, 2023, Mohamed A. entered the United States and was detained at or near the U.S.-Mexico border. (Pet. ¶¶ 3, 62.)

3.    Within days of his detention, DHS applied 8 U.S.C. § 1226 to Mohamed, releasing him on his own recognizance and initiating removal proceedings against him. (*Id.* ¶¶ 3, 62, 63; *see also* Doc. No. 18-2 at 2 ("[Mohamed A.] was released from the custody of [DHS] by "Order of Recognizance" (OREC) pending his immigration hearing. This release was authorized through proper channels.").) DHS charged Mohamed A. with being removable for being "a[] [non-citizen] present in the United States without being

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (Doc. No. 2 at 1.)

4.     Mohamed A. has attended all scheduled hearings in his removal proceedings. (Pet. ¶¶ 63, 67.)

5.     In 2023, the federal government authorized Mohamed A. to lawfully work in the United States. (*Id.* ¶ 4.)

6.     As of today, Mohamed A.'s work authorization remains valid. (*Id.* ¶ 66.)

7.     In July 2023, Mohamed A. filed a Form I-589, Application for Asylum and Withholding of Removal, on grounds that he fears physical harm, torture, or death if he returns to Somalia. (*Id.* ¶¶ 64, 65; Doc. No. 2-1.)

8.     Since 2024, Mohamed A. has worked full-time in a group home, where he cared for and administered medication to elderly and vulnerable patients, and he also works as a rideshare driver. (Pet. ¶¶ 4, 5.)

9.     Mohamed A. has developed meaningful social ties to the Twin Cities community. (*Id.* ¶¶ 4, 5.)

10.    Mohamed A. has no criminal history in the United States. (*Id.* ¶ 71; Doc. No. 182 at 2 ("[Mohamed A.] has no criminal history.").)

11.    On December 10, 2025, sometime between 9:00 a.m. and 11:00 a.m., three masked Immigration and Customs Enforcement (ICE) agents stopped Mohamed A. during daytime hours while he was working as a rideshare driver near the Minneapolis–St. Paul

3

International Airport.[2]  (Pet. ¶¶ 6, 69; Doc. No. 28 ¶ 2(a); Doc. No. 28-1 (depicting Mohamed A.'s arrest during the daytime and near the Minneapolis–St. Paul International Airport.)  Agents drew their weapons at Mohamed A. when they commanded him to exit his vehicle.  (Doc. No. 28 ¶ 2(b).)

12.    Mohamed A. provided ICE agents his work authorization documents during the encounter.  (Pet. ¶ 69; Doc. No. 28 ¶ 2(d).)

13.    ICE agents forcibly removed Mohamed A. from his vehicle, arrested him without a warrant, and brought him to the Bishop Henry Whipple federal building at Fort Snelling.  (Pet. ¶ 6; Doc. No. 28 ¶¶ 2(d), (e).)

14.    The ICE agents did not present a warrant during the encounter or inform Mohamed A. that he was being arrested pursuant to a warrant.  (Doc. No. 28 ¶¶ 2(e), (f).)

15.    At the Whipple building, agents denied Mohamed A.'s request to make a phone call.[3]  (Doc. No. 28 ¶ 2(g).)

---

[2] The Federal Respondents submitted a declaration made by an ICE deportation officer, Ivan Sabin, to verify certain facts around Mohamed A.'s arrest and detention.  The Court doubts the truth of certain statements in Sabin's declaration because Sabin does not attest to having personal knowledge around the facts and circumstances of Mohamed A.'s arrest and detention; instead, he relies on his "professional knowledge, [his] review of records and systems maintained by ICE in the regular course of business, and information provided by other [unidentified] agents and officers."  (Doc. No. 18 ¶ 3.)  For example, Sabin avers in his declaration that ICE arrested Mohamed A. "outside a residence in St. Paul."  (Doc. No. 18 ¶ 7.)  This is plainly false.  The video footage of the arrest shows Mohamed A.'s car parked in a non-residential area along a snowy road surrounded by high fences, runway lights, street lights, and a nearby descending passenger airplane.  (*See* Doc. No. 29.)

[3] The Form I-213 document created by ICE during Mohamed A.'s booking falsely states that he is a citizen of Mexico and that he was encountered and arrested "outside a residence" at the address of "800 White Bear Avenue N" in St. Paul.  (Doc. No. 18-2 at 2.)

16.     Later, after shaving Mohamed A.'s wrists and legs, ICE agents transferred Mohamed A. to a facility in Willmar, Minnesota.  (Pet. ¶ 6; Doc. No. 28 ¶ 2(h).)

17.     At "5 pm" on December 10, 2025, several hours after Mohamed A.'s arrest,[4] a Warrant was drafted and served.  (Doc. No. 18-1.)  This document, however, has notable errors.  For instance, Mohamed A.'s first and last names are transposed.  (*Id.*)  In addition, the form document includes five boxes for the issuing administrative officer to check as the basis for the warrant; the issuing officer checked none.

18.     On December 21, 2025, ICE agents informed Mohamed A. that he would be returned to the Whipple Building for an interview.  This was a false statement.  Instead of interviewing Mohamed A. upon arrival at the Whipple Building, agents placed him in handcuffs and transferred him to an ICE facility in Louisiana.  (Pet. ¶ 6.)  Mohamed A. was not told why he was being moved to Louisiana.  (Doc. No. 28 ¶ 2(m).)

19.     Agents did not permit Mohamed A. to make a telephone call or contact an attorney before transferring him out of the District.  (Doc. No. 28 ¶ 2(m).)

20.     On December 29, 2025, eight days after moving Mohamed A. from Minnesota to Louisiana, ICE filed an ICE Form I-830E, which notified the immigration court—and Mohamed A.'s counsel—of Mohamed A.'s transfer to Pine Prairie ICE

---

[4] The Court takes judicial notice that the sun set at 4:31 p.m. on December 10, 2025 in Saint Paul, Minnesota.  The video of Mohamed A.'s arrest was taken in daylight.

Processing Center in Pine Prairie, Louisiana.[5]  (Doc. No. 2-2.)  Since then, Mohamed A. has remained detained in Pine Prairie, Louisiana.  (Pet. ¶ 1.)

21.     On March 2, 2026, after a merits hearing, an immigration judge issued an order denying Mohamed A.'s application for asylum, his request for withholding of removal, and his requests for protection and deferral of removal under the Convention Against Torture.  (*Id.* ¶ 73; Doc. No. 2-3.)

22.     On March 26, 2026, Mohamed A. timely filed an appeal of the immigration judge's March 2 decision.  (Doc. No. 2-4.)

23.     On June 1, 2026, Mohamed A. filed his Petition.  (*See* Pet.)

24.     On June 1, 2026, the Court ordered Respondents to file a response to the Petition on June 3, 2026 at 11:00 a.m. and to return Mohamed A. to Minnesota on or before June 3, 2026 at 11:00 a.m. (Doc. Nos. 5, 6.)

25.     On June 2, 2026, the Federal Respondents requested an extension of time to return Mohamed A. to Minnesota (Doc. No. 8), which the Court granted in part and denied in part.  (Doc. No. 11.)  The Court later stayed the portion of its June 1 Order requiring Mohamed A.'s return to Minnesota.  (*See* Doc. No. 19.)

26.     Also on June 2, 2026, the Federal Respondents filed a motion to dissolve the Court's June 1, 2026 order requiring Mohamed A. to be returned to Minnesota, which the

---

[5] Under 8 C.F.R. § 1003.19(g), DHS is required to "immediately advise the Immigration Court having administrative control over the Record of Proceeding of a change in the respondent/applicant's custody . . . ."  The filing of Form I-830E in this case did not occur immediately after the change in custody.

Federal Respondents characterize as a Temporary Restraining Order issued pursuant to Federal Rule of Civil Procedure 65. (Doc. No. 12.)

27. On June 3, 2026, the Federal Respondents filed a timely response to the Petition. (Doc. No. 17.)

28. On June 8, 2026, Mohamed A. timely responded to the Federal Respondents' motion to dissolve. (Doc. Nos. 19, 23.)

29. Guillory has not appeared.

## DISCUSSION

In his Petition, Mohamed A. seeks immediate release and argues that his arrest and ongoing custody violates 8 C.F.R. § 236 (Count V), the Due Process clause of the Fifth Amendment (Counts I and II), and the warrant requirement of the Immigration and Nationality Act and the Fourth Amendment (Count III). For their part, the Federal Respondents argue that the Court lacks subject-matter jurisdiction over this matter, and that it must transfer the matter to the Western District of Louisiana; but that if the Court retains jurisdiction, the matter must be dismissed because Mohamed A. is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Doc. No. 17.) For the reasons set forth below, the Court grants the Petition.

### A.      Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual

7

detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)).  For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted).  The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted).  The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence.  *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

**B.      Subject-Matter Jurisdiction**

The Federal Respondents argue that, pursuant to *Rumsfeld v. Padilla*, 542 U.S. 426, 427 (2004), the Court lacks subject matter jurisdiction over this matter because habeas jurisdiction lies in the district of confinement.  (Doc. No 17 at 4–7.)  Mohamed A. argues that the district-of-confinement rule is a venue rule and not a jurisdictional bar and that certain factual considerations around the circumstances of his arrest and confinement keep Mohamed A.'s petition within the Court's jurisdiction—specifically, that the Federal Respondents moved Mohamed A. from Minnesota to Louisiana without providing an opportunity to contact counsel and avail himself of the Court's habeas jurisdiction before being forcibly transferred out of the District.  (Doc. No. 23 at 7.)

The Court agrees with Mohamed A.  The application of the "immediate custodian" rule is not automatic, and this Court may consider factors regarding convenience and appropriateness of the district.  *Luis N. v. Trump*, No. 26-cv-0171 (MJD/SGE) Doc. No. 8, at *3 (D. Minn Jan. 16, 2026) (citing *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 493

8

(1973)). This Court considers such factors, especially since this Court can reach the custodian by service of process. *Braden*, 410 U.S. at 493 ("So long as the custodian can be reached by service of process, the court can issue a writ [of habeas corpus] . . . even if the petitioner himself is confined outside the court's jurisdiction."). This is also the case when the Federal Respondents control the timing and method of transfers and have made efforts to immediately transfer detainees out of the District of Minnesota in recent months. *See e.g.*, *Gabriel A.H.L. v. Noem*, No. 26-CV-0860 (JRT/EMB), 2026 WL 323106, at *2 (D. Minn. Feb. 6, 2026) ("Government-controlled transfers, like the one in this case . . . have been a defining characteristic of Respondents' coordinated Operation Metro Surge program in Minnesota." (quotation omitted)); *see also Christian A.S.C. v. Bondi*, No. 26-CV-0778 (JRT/LIB), 2026 WL 323098, at *2 (D. Minn. Feb. 6, 2026) (declining to transfer to district of confinement notwithstanding counsel's knowledge of petitioner's whereabouts at time of filing on grounds that the petition "arises in the context of a concerted effort by the government to arrest residents of this state and immediately transfer them," and because petitioner resided, was arrested, and was initially detained in Minnesota); *Advocs. for Hum. Rts. v. U.S. Dep't of Homeland Sec.*, __ F. Supp. 3d __, __, No. 26-CV-0749 (NEB/DLM), 2026 WL 850270, at *3–4 (D. Minn. Mar. 26, 2026) (imposing a restraining order prohibiting the Federal Respondents from transferring detainees and concluding that the Federal Respondents intentionally moved detainees frequently, quickly, and often blindly, which made access to counsel "virtually impossible" during "Operation Metro Surge").

The Federal Respondents urge the Court to strictly apply the district-of-confinement rule without any reference to or analysis of the numerous cases in which this Court has considered the requisite factors and exercised jurisdiction over petitions brought by non-citizens detained in Minnesota but later unilaterally transferred to other Districts. (*Compare* Doc. No. 13 and Doc. No. 17, *with* Pet. 1 ¶¶ 19–20.)  The Federal Respondents, therefore, have waived any opposition to Mohamed A.'s argument that this Court can exercise jurisdiction given the application of the factors regarding convenience and appropriateness of the district.[6]  *See Rodriguez-Quiroz v. Lynch*, 835 F.3d 809, 822 n.6 (8th Cir. 2016) (noting that the government forfeited or waived an argument by failing to raise it in an immigration appeal); *Estephanny P. v. Bondi*, No. 26-CV-0198 (ECT/JFD), 2026 WL 115067 (D. Minn. Jan. 15, 2026) ((citing *Doe v. Mayorkas*, No. 22-cv-752 (ECT/DTS), 2022 WL 4450272, at *2 (D. Minn. Sep. 23, 2022) (concluding that failure to respond is an express waiver of those arguments or claims)).

Even assuming that Respondents had not waived their argument here, the Court concludes that the District of Minnesota is the appropriate venue to adjudicate the Petition.

---

[6] In their briefing, the Federal Respondents' counsel does cite to a declaration by an ICE Deportation Officer to support their assertion that Mohamed A. was moved from Minnesota to Louisiana due to a lack of bed space. (*See* Doc. No. 13 at 2.)  However, the declaration to which the Federal Respondents cite do not mention the reason DHS decided to move Mohamed A., much less that he was moved due to a shortage of available beds in Minnesota or that such a shortage was outside of DHS's control. (*See* Doc. No. 18.)  In addition, this Court also considered and rejected the explanation that a shortage of bed space compelled immediate and wholesale transfer of detainees, referring to this explanation as "unsupported" and "speculative." *Advocs. for Hum. Rts.*, __ F. Supp. 3d at __, 2026 WL 850270, at *22.

The Federal Respondents' decision to arrest and detain Mohamed A. was directed to personnel within this District, and therefore witnesses and information about the manner of his arrest would also be found in this District. Mohamed A. was, for at least some time, actually detained within this District; during that time, the Federal Respondents did not inform Mohamed A. that he would be transferred out of the District at any time or permit him to contact counsel, and, when they did decide to transfer him, they did not tell him why. Further, Mohamed A. has lived in Minnesota for several years, and he was unable to file his petition prior to being involuntarily transferred. Finally, transferring venue to Louisiana tacitly sanctions forum shopping, as the Federal Respondents could quickly transfer detained individuals to a District of their choosing. *See also Christian A.S.C.*, 2026 WL 323098, at *2 (declining to transfer to district of confinement because of the government's "concerted effort" to arrest and immediately transfer residents of this state out of the District and because petitioner resided, was arrested, and was initially detained in Minnesota); *Jose V. v. Easterwood*, No. 26-CV-0597 (DSD/LIB), 2026 WL 222175, at *1 (D. Minn. Jan. 28, 2026) (concluding Court had jurisdiction over petition where petitioner "has lived here [Minnesota] for over two years, was arrested here, and was initially detained here); *Jose A. v. Noem*, No. 26-CV-0480 (JMB/ECW), 2026 WL 172524, at *2 (D. Minn. Jan. 22, 2026) (concluding Court had jurisdiction over habeas petitioner who was arrested in Minnesota and transferred to Texas).

Therefore, this Court concludes that this District is the appropriate forum for deciding Mohamed A.'s Petition.

### C.    Procedural Requirements of 8 C.F.R. § 236.1

11

In Count V of the Petition, Mohamed A. challenges his re-detention as a violation of federal regulations because the Federal Respondents re-detained him without first revoking his 2023 order of release. (Pet. ¶¶ 113–15; *see also* ¶ 81 (asserting re-detention without prior notice, a showing of changed circumstances or a meaningful opportunity to respond); 102 (referring to regulatory requirements of 8 C.F.R. § 236.1(c)).) The Court agrees.

Federal regulations set forth a "series of procedural protections" to lawfully re-detain a person previously ordered released, as follows:

> To properly redetain [a person] under section 236, an immigration officer first would have had to exercise his or her discretion to revoke [the person's] release on bond. After [the person] was redetained, his bond would have had to have been revoked and cancelled. [The person] then could have applied to an immigration judge for a bond hearing and release. If the immigration judge denied his request, [the person] could have appealed that decision to the BIA.

*Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 & n.22 (S.D.N.Y. Nov. 26, 2025) (concluding respondents violated applicable federal regulations and the Due Process Clause when they re-detained petitioner without complying with 8 C.F.R. § 236); *see also, e.g.*, *Salazar v. Noem*, No. 26-CV-1040 (JMG), 2026 WL 381889 (D. Minn. Feb. 11, 2026) (collecting cases) (same); *Hakan v. Noem, et al.*, No. 25-CV-4722 (JMB/DTS), Doc. No. 14, at *9–11 (D. Minn. Dec. 24, 2025) (same).

Here, the Federal Respondents present no facts regarding any decision to revoke Mohamed A.'s release order and make no argument that revocation was lawful. In fact, in their briefing and in the supporting Sabin declaration, the Federal Respondents do not

even acknowledge that Mohamed A. was released in 2023 on an Order of Recognizance or that release occurred pursuant to section 1226. (Doc. Nos. 17, 18.) Instead, this information is buried in a supporting document that acknowledges that Mohamed A. was "released from the custody of [DHS] by 'Order of Recognizance' (OREC)" and that "[t]his release was authorized through proper channels." (Doc. No. 18-2 at 2.) Further, there is no indication in the record presented that any official afforded Mohamed A. any process prior to his arrest. It is undisputed that Mohamed A. was released on his own recognizance in 2023 pursuant to section 8 U.S.C. § 1226 and had been residing in the United States pursuant to that decision for more than two years prior to his December 10, 2025 arrest. The record also shows that no official made any individualized, discretionary decision to revoke Mohamed A.'s section 1226 release.[7]

###   D.   Invalidity of the Administrative Warrant

Mohamed A. alternatively argues that his warrantless arrest was unlawful. Respondents argue only that there was a Form I-200 warrant issued in this case, but they offer no analysis or well-developed legal argument to support its validity. The Court concludes that the warrant was not valid.[8]

---

[7] The Court is also persuaded by the analysis in *Barco Mercado* that re-detention absent a revocation of the prior release order violates the Due Process Clause, as asserted in Counts I and II. The Court also grants the Petition on this independent basis as well.

[8] The Court observes that Respondents do no argue that a warrant was not necessary. Absent any legal argument that a warrant was not needed or that the validity of the Form I-200 is irrelevant to the lawfulness of Mohamed A.'s arrest, the Court only considers whether the Form I-200 provided a valid legal justification for Mohamed A.'s arrest. Moreover, to the extent Respondents contend that the remedy is a custody redetermination hearing and not immediate release, the Court is not convinced. Mohamed A. was already

13

First, the warrant was not issued or served until after Respondents arrested Mohamed A.  The arrest occurred between 9:00 and 11:00 a.m. on December 10, 2026, during daytime hours.  (Doc. No. 28 ¶¶ 2(a), (b); Doc. No. 28-1.)  No warrant was presented at the time of the arrest.  (*Id.*)  Rather, the Form I-200 appears to have been served several hours after Mohamed A.'s arrest; the "Certificate of Service" indicates service occurred at "5 pm."  (Doc. No. 18-1.)  Therefore, the warrant cannot justify the arrest.

Second, the warrant contains no basis for its legal determination.  The issuing officer neglected to select any of the available options that could have justified the legal determination of probable cause.  (*Id.*)  Absent any basis, the warrant cannot be valid.

In summary, the Court concludes that Mohamed A.'s re-detention was unlawful, and the Court grants the petition and orders release of Mohamed A.

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1.    Respondents are ORDERED to release Petitioner Mohamed A. in Minnesota immediately, and in any event no later than 4:00 p.m. CT on June 19, 2026, subject to and in accordance with the conditions in his preexisting Order of Release on Recognizance from 2023.

2.    On or before 11:00 a.m. CT on June 22, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Mohamed A.

3.    On or before 11:00 a.m. CT on June 22, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with

---

released under section 1226 and Respondents offer no basis for the Court to conclude that once released under section 1226, a person may be arrested at any time without formal revocation of the release order or any bond imposed and, thereafter, be prohibited from seeking release in a subsequent habeas proceeding.

personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4.    Petitioner Mohamed A. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5.    To the extent Petitioner Mohamed A. seeks additional relief, the Petition is DENIED.

6.    The Federal Respondents' Motion to Dissolve the Court's June 1, 2026 Order requiring Respondents to return Mohamed A. from a facility in Louisiana to Minnesota (Doc. No. 12) is DENIED as MOOT.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 18, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court

15